675 A.2d 596

**Daniel C. LEMLEY**

**v.**

**Suzanne B. LEMLEY**

**No. 1098, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 2, 1996.

Reconsideration Denied June 25, 1996.

622

Daniel C. Lemley, Potomac, for appellant.

Carole C. Perez, Rockville, for appellee.

Argued before FISCHER, CATHELL and HOLLANDER, JJ.

FISCHER, Judge.

Daniel C. Lemley contests the order of the Circuit Court for Montgomery County awarding Suzanne C. Lemley: (1) custody of the pair's two minor children; (2) a monthly child support payment in the amount of approximately $700; and (3) attorney's fees in the amount of $10,000. Mr. Lemley

raises a variety of issues for our review, which we have reordered, reworded, and condensed for clarity: [1]

I. Did the chancellor [2] err by awarding physical and legal custody of the two minor children to Mrs. Lemley?

II. Did the chancellor err in imposing on Mr. Lemley a $717.18 per month child support payment obligation?

III. Did the chancellor have jurisdiction to hold the hearing on the merits on January 9, 1995?

IV. Did the chancellor afford Mr. Lemley proper notice and opportunity to be heard at the January 9, 1995 hearing?

V. Did the chancellor abuse his discretion in awarding Mrs. Lemley attorney's fees?

## Facts

Mr. and Mrs. Lemley were married in 1975. Two children were born as a result of this union: Stuart, born in 1981, and Warren, born in 1985. At the time of marriage, Mr. Lemley had retired from the District of Columbia Fire Department with a disability pension. Mr. Lemley made various attempts at other employment, with limited success. As of the filing of this instant appeal, Mr. Lemley is employed as a computer salesman. Mrs. Lemley began full-time work as a legal secretary in 1989, and continues in that position today.

In May of 1991, Mrs. Lemley left the marital home and took the two minor children with her. Mr. Lemley then undertook the first step in the procedural odyssey that is this case, filing a petition for immediate return of the children, custody, and child support. Mrs. Lemley filed a cross-complaint for divorce. Eventually, a full hearing on the merits was held before a master, at which all contested issues were raised.

---

1. In his brief, Mr. Lemley makes twenty-four assignments of error. We decline to provide a separate analysis for each of these points. Instead, fully recognizing Mr. Lemley's *pro se* status, we will include a detailed analysis of only those claims raised by his brief that are based on at least an arguable legal foundation.

2. For purposes of this opinion the trial judge in the circuit court will be referred to as the chancellor.

The master issued her recommendations on June 10, 1993. Mr. Lemley failed to file timely exceptions to the master's recommendations, and on June 21, 1993, the court initially granted Mrs. Lemley's complaint for absolute divorce. The judgment awarded Mrs. Lemley custody of the two minor children, ordered Mr. Lemley to pay $673.22 in monthly child support, and denied all requests for use and possession, alimony, attorney's fees, and a monetary award. Upon request by Mr. Lemley, the court agreed to waive the late filing violation and allowed Mr. Lemley to file exceptions to the recommendations. The chancellor denied Mr. Lemley's exceptions in full after consideration at a hearing. Mr. Lemley then filed his first appeal with this Court.

In Mr. Lemley's first appeal, filed October 31, 1994, this Court vacated the chancellor's decision regarding absolute divorce and remanded for a more definite statement. (The prior appeal is recorded at *Lemley v. Lemley*, 102 Md.App. 266, 649 A.2d 1119 (1994)). We also vacated and remanded on the custody issue, as the chancellor failed to address specifically Mr. Lemley's exceptions to the recommendations with references to facts in the record. We vacated and remanded the monetary award, and we reversed the award of child support and remanded for recalculation of the award based on the actual dollar amount of Mr. Lemley's disability pension, as opposed to the adjusted for tax-free status figure used by the chancellor in his previous calculation. The judgment of the chancellor was affirmed in all other respects.

At the hearing on November 18, 1994, the chancellor informed the parties that he would await the issuance of this Court's mandate before conducting a full hearing on the merits in conjunction with the order of this Court. The chancellor then scheduled the matter for a full hearing on the merits to begin on January 9, 1995 at 9:30 A.M., and to continue until completion. Originally, when issuance of the mandate was presumed to be imminent, the parties also planned to have a one or two hour hearing, within a day or two of the issuance of the mandate, solely on the issue of custody. That hearing never occurred.

Mr. Lemley filed a Motion to Reconsider Opinion with this Court on November 22, 1994, which delayed the issuance of our mandate until a ruling was made on that motion. The motion was denied on December 27, 1994, and the mandate was issued on January 6, 1995. Mr. Lemley filed a Motion for Removal, which the Administrative Judge for the Montgomery County Circuit Court heard and denied on January 9, 1995. On that same day the chancellor heard from both parties on preliminary matters, stated that he would take the evidence gathered at that hearing under advisement until he received the mandate, and reset the full hearing on the merits to commence on January 10, 1995. The chancellor and the parties received the mandate before the start of the hearing, on January 10. The hearing continued through January 13, 1995.

The chancellor recorded his decision in an eleven page Memorandum Opinion and Order, filed June 12, 1995. In that order, the chancellor: (1) granted Mrs. Lemley an absolute divorce [3]; (2) granted Mrs. Lemley care, custody, and control of the minor children; (3) ordered Mr. Lemley to pay child support in the amount of $717.18 per month; and, (4) ordered Mr. Lemley to pay Mrs. Lemley $10,000 as contribution for her attorney's fees. Mr. Lemley filed this timely appeal to contest that disposition.

### Discussion

■ When making a decision to uphold the recommendations of a master over a party's exceptions, a chancellor is required to find with particularity and refer to the facts in evidence on which he or she relied. *See Domingues v. Johnson,* 323 Md. 486, 496, 593 A.2d 1133 (1991). In *Lemley I,* the chancellor failed to provide this required specificity and particularity. For that reason, we remanded the chancellor's decisions regarding custody, absolute divorce, and the requirement that Mr. Lemley pay child support. In addition, we

---

3. The order granting an absolute divorce is not contested in this appeal.

provided some guidance as to the proper steps for the chancellor to take in issuing his or her order on remand.

In this case, the chancellor conducted hearings on January 9–13, 1995, in part to gather additional evidence. After hearing argument and testimony from both sides, the chancellor recorded his decision in an eleven page Memorandum Opinion and Order, with a supplement including the Child Support Worksheet. An examination of the chancellor's opinion on the issues raised by Mr. Lemley will illustrate that the chancellor complied with the procedural guidelines detailed by this Court in its opinion on the prior appeal.

## I.

█ When we analyzed the propriety of the chancellor's decision to grant custody of the two minor children to Mrs. Lemley on the first appeal, this Court stated that on remand, at a minimum, the chancellor should separately address each of the four broad findings on which he based his decision and state for the record how he resolved each challenge. In his opinion on remand, the chancellor listed the factors to be considered when deciding custody, and went through an analysis of each of these factors as applied to the facts of the instant case. The chancellor also listed the additional facts and evidence he considered in reaching his decision. In doing so, the chancellor referred to specific facts from the record as the basis for his decision on each contested issue, as required by the prior order of this Court.

█ Our analysis, however, does not stop here. After determining that the chancellor acted in accordance with the requirements of our mandate, Mr. Lemley's current appeal requires us to determine if the chancellor was clearly erroneous in his findings. To prove that a chancellor's decision was clearly erroneous is an extremely heavy burden. "The chancellor's decision in a contested custody case, frequently among the most difficult a judge is called upon to make, is of critical importance ... It is unlikely to be overturned on appeal." *Domingues*, 323 Md. at 492, 593 A.2d 1133. A chancellor's

decision founded upon sound legal principles and based upon factual findings that are not clearly erroneous will not be disturbed in the absence of a showing of a clear abuse of discretion. *Ross v. Hoffman,* 280 Md. 172, 186, 372 A.2d 582 (1977); *Bagley v. Bagley,* 98 Md.App. 18, 31–32, 632 A.2d 229, *cert. denied,* 334 Md. 18, 637 A.2d 1191 (1994); *Davis v. Davis,* 280 Md. 119, 124–125, 372 A.2d 231, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). A finding of a trial court is not clearly erroneous if there is competent or material evidence in the record to support the court's conclusion. *E.g., Maxima Corp. v. Cystic Fibrosis,* 81 Md.App. 602, 610, 568 A.2d 1170, *cert. denied, 6933 Arlington Development v. Maxima Corp.,* 319 Md. 582, 573 A.2d 1337 (1990); *see also Maryland Metals, Inc., v. Metzner,* 282 Md. 31, 41, 382 A.2d 564 (1978) (stating that, if there is substantial evidence in the record to support a finding of a trial court, then that finding is not clearly erroneous).

Under the clearly erroneous standard, this Court does not sit as a second trial court, reviewing all the facts to determine whether an appellant has proven his case. Instead, our task is to search the record for the presence of sufficient material evidence to support the chancellor's findings. Additionally, all evidence contained in an appellate record must be viewed in the light most favorable to the prevailing party below. *Maryland Metals,* 282 Md. at 41, 382 A.2d 564.

In the instant case, the record of the hearing before the master is extensive and includes testimony from numerous witnesses. Included therein is testimony favoring both parties to this case. When we remanded this case to the chancellor, he conducted additional fact finding, including the taking of testimony from Dr. Copeland, an expert witness appointed by the court to determine what custody disposition would be in the best interests of the two minor children. Doctor Copeland strongly recommended that Mrs. Lemley be awarded custody. His testimony is evidence considered by the chancellor in support of the decision to award custody to Mrs. Lemley. In light of the considerable deference afforded to the finder of

fact under the clearly erroneous standard, this evidence, in conjunction with the other evidence in support of Mrs. Lemley, is sufficient to uphold the judgment of the chancellor, and we refuse to disturb it.

## II.

■ The other issue raised by Mr. Lemley's brief that had been dealt with on the previous appeal is the payment of child support. We reversed the initial award of child support by the chancellor, with the direction that, on remand, the chancellor make a child support payment determination using the actual dollar amount of Mr. Lemley's disability pension in his calculation, and not a value adjusted to reflect the pension's tax free nature. As evidenced by the Child Support Worksheet, the chancellor set Mr. Lemley's payment obligation at $717.18. To arrive at this figure, the chancellor used the actual dollar value of Mr. Lemley's disability pension in conjunction with his earnings from his computer sales job. That procedure satisfied our mandate, and we see no error in the chancellor's decision on this issue.

## III.

Mr. Lemley maintains that the chancellor did not have jurisdiction to conduct a hearing on the merits on January 9–13, 1995. Mrs. Lemley insists that the chancellor made no procedural error by holding this hearing.

Md. Rule 8–604(d) states, "Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court." This Rule is clarified by Md. Rule 8–606(e), which states, in part, "Upon receipt of the mandate, the clerk of the lower court shall enter it promptly on the docket and the lower court shall proceed in accordance with its terms."

■ Mr. Lemley, however, attempts to impose a requirement not contained in Rule 8–606(e). Nowhere in the plain language of Rule 8–606(e) is there a provision requiring that the trial court, or chancellor, refrain from conducting hearings

on a case on remand after the issuance of the mandate, but before that mandate has been docketed by the clerk. *See, eg., State v. Thompson,* 332 Md. 1, 8, 629 A.2d 731 (1993) (stating that each statute must be given a reasonable interpretation and one that is compatible with common sense).

In addition, the law as announced by an appellate court in its written opinion is in effect and controlling as of the date of the filing of the opinion. *Firstman v. Atlantic Constr. & Supply,* 28 Md.App. 285, 295, n. 12, 345 A.2d 118 (1975). The mandate serves to evidence the action of the appellate court on the particular judgment appealed from and to direct the lower court to proceed according to the tenor and directions of the opinion. *Id.* The docketing of the mandate is simply a clerical function. *See Save the Trains Ass'n v. Chicago & N.W. Ry. Co.,* 168 Neb. 180, 95 N.W.2d 334 (1959) (stating that the issuance of a mandate is a ministerial act only, and that a bona fide judgment rendered by an appeals court may be relied and acted upon). As long as the proceedings are conducted in accordance with the mandate, common sense dictates that the Rule is satisfied. *See Gardner v. State,* 547 So.2d 806 (Miss.1989) (stating that the circuit court could enter resentencing order in anticipation of receipt of mandate, with order taking effect upon occurrence of such circumstance); *but see Matter of Compensation of Castro,* 60 Or.App. 112, 652 P.2d 1286 (1982) (stating that action taken by a lower court before the receipt or issuance of a mandate is void). We, hold, therefore, that the circuit court may act in accordance with the mandate of this Court upon receipt of the mandate and prior to the docketing of the mandate by the circuit court clerk.

The mandate in this case was issued on January 6, 1995. The chancellor held a preliminary hearing in accordance with this Court's opinion on January 9, 1995. At this hearing, the chancellor reset the full hearing on the merits to commence on January 10, 1995, with all evidence gathered at that hearing to be taken into consideration, and any decision on the matter

withheld pending receipt of the mandate. The chancellor received the mandate before the start of proceedings on January 10, 1995. The hearing was then conducted in accordance with the opinion, order, and mandate of this Court. The clerk of the trial court entered the mandate on the docket of that court on January 31, 1995, less than a month after receipt. The chancellor subsequently issued his Memorandum Opinion and Order on June 12, 1995. None of these actions taken by the chancellor contravened the procedural requirements of the rule. Thus, Mr. Lemley's claim that the chancellor did not have jurisdiction to conduct these proceedings is without merit.

## IV.

Mr. Lemley also argues that he was not afforded a proper notice and opportunity to be heard in relation to the January 9–13 hearings. In support of this argument, he maintains that the hearing date was not finalized until the issuance of the mandate on January 6, and that the intervening three days between that date and the start of the hearing constituted insufficient time to prepare his case.

Mr. Lemley's argument on this issue is not persuasive. The chancellor set the January 9, 1995 hearing date at the proceeding on November 18, 1994. On the record, and in the presence of both parties, the chancellor stated, "we will set this matter for a full custody hearing on the merits on January 9, 1995 at 9:30 AM until completion." Mr. Lemley had nearly two months notice that a hearing was scheduled for January 9.[4] This is sufficient notice. At the hearing, Mr. Lemley was allowed to offer testimony from numerous witnesses, as well as his own arguments. He had sufficient opportunity to be

---

4. There was an uncontemplated delay in the issuance of the mandate, which could arguably have led to some uncertainty as to the hearing date. We do not believe, however, that Mr. Lemley was prejudiced by this uncertainty.

'heard.[5]

## V.

The final issue raised in Mr. Lemley's brief is the propriety of the award of $10,000 in attorney's fees to Mrs. Lemley. Mr. Lemley argues that the chancellor erred when he entered the order for fees without making a specific finding of bad faith. Mrs. Lemley maintains that the chancellor correctly applied the criteria set down in *Foster v. Foster*, 33 Md.App. 73, 364 A.2d 65, *cert. denied*, 278 Md. 722 (1976), when he awarded her contribution towards her attorney's fees.

The statute applied by this Court in *Foster* has since been repealed. Maryland Code (1957, 1973 Repl.Vol.) Art. 16, § 5, *repealed* by Acts 1984, ch. 296, § 1 effective October 1, 1984. Currently, however, two statutes allow for the award of fees in the instant case. Md.Code (1984, 1991 Repl.Vol., 1995 Supp.), § 11–110 of the Family Law Article, authorizes the chancellor to award to either party in an action for alimony reasonable and necessary counsel fees after considering: (1) the financial resources and financial needs of both parties; and (2) whether there was substantial justification for prosecuting or defending the proceeding. *Davis v. Davis*, 97 Md.App. 1, 24–25, 627 A.2d 17, *aff'd*, 335 Md. 699, 646 A.2d 365 (1994).

Md.Code (1984, 1991 Repl.Vol., 1995 Supp.), § 12–103 of the Family Law Article states that a chancellor may award the costs and counsel fees that are just and proper under all the circumstances in any case in which a person applies for a decree concerning the custody, support, or visitation of a child of the parties. Before a chancellor can award such costs, he shall consider: (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing or defending the proceeding. *Randolph v. Randolph*, 67 Md.App. 577, 589, 508 A.2d 996 (1986).

---

5. In addition, both parties would agree that time is of the essence in a custody dispute where minor children are involved. Any delay in finalizing the living situation of the children is to be avoided whenever possible. We will not criticize a chancellor for acting with all reasonable haste to effectuate this worthwhile purpose.

██ Under either provision, the chancellor must undertake the same investigation before making an award of attorney's fees. The chancellor must consider the financial resources and needs of both parties and consider whether the party had substantial justification to prosecute or defend the proceeding. The chancellor may then exercise his discretion in deciding whether the award of fees is reasonable, *Petrini v. Petrini,* 336 Md. 453, 467, 648 A.2d 1016 (1994), and if so, in what amount, *see DeLeon v. Zaino,* 92 Md.App. 399, 419, 608 A.2d 828, *cert. denied,* 328 Md. 239, 614 A.2d 84 (1992).

██ The reasonableness of the attorney's fees award is within the discretion of the chancellor and will not be disturbed unless the judgment was arbitrary or clearly erroneous. *Broseus v. Broseus,* 82 Md.App. 183, 200, 570 A.2d 874 (1990). When the case permits attorney's fees to be awarded, the fees must be reasonable, taking into account such factors as labor, skill, time and benefit afforded to the client by the attorney, as well as the financial resources and needs of each party. *See Petrini,* 336 Md. at 467, 648 A.2d 1016. An award of attorney's fees will not be reversed, however, unless a chancellor's discretion was exercised arbitrarily or the judgment was clearly erroneous. *Broseus,* 82 Md.App. at 200, 570 A.2d 874.

We recognize that a chancellor's discretionary decision to award attorney's fees is normally afforded deference on appeal. In the instant case, however, consideration of the relative financial needs and resources of the parties as well as the labor, skill, and time expended by the parties' attorneys illustrates that the chancellor's decision to grant Mrs. Lemley attorney's fees was not reasonable, and was clearly erroneous.

The record in the instant case shows that Mrs. Lemley earned approximately twice as much income as Mr. Lemley in 1993 and 1994. This measure of the parties' relative financial resources strongly suggests that Mrs. Lemley is better able to pay her attorney's fees than Mr. Lemley. An additional factor to be considered is the labor, skill, and time expended by the parties' attorneys. Mr. Lemley appeared *pro se* in a large

portion of these proceedings. It is unreasonable to require Mr. Lemley to pay for the benefit of professional counsel for the opposing party, while being unable to afford that benefit for himself. In light of these factors, the chancellor clearly erred in his decision to award Mrs. Lemley $10,000 in attorney's fees.

In addition, *Foster*, the case cited by the chancellor as controlling, states that for an award of attorney's fees to be proper, a fact based evaluation of the financial resources and needs of each party must indicate that Mrs. Lemley's income is insufficient to care for her needs.[6] *See Foster*, 33 Md.App. at 78, 364 A.2d 65. Although the chancellor does mention in his order that the litigation expenses are extensive, the record does not indicate, nor does the chancellor state, that Mrs. Lemley's income is insufficient to meet her needs and pay her attorney's fees. To the contrary, Mrs. Lemley's income indicates that she could pay her attorney's fees while taking care of her own needs. Evaluation of the instant case, under the principles outlined in *Foster*, yields a result in accord with the previous statutory analysis—that the chancellor's decision lacked the required basis in the record to justify the award of $10,000 in attorney's fees to Mrs. Lemley. As it is conceivable that a fee of a lessor amount may be justified, we will remand to the circuit court for further consideration of the issue.

**JUDGMENT GRANTING $10,000 IN ATTORNEY'S FEES TO APPELLEE VACATED. ALL OTHER JUDGMENTS AFFIRMED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR RECONSIDERATION OF THE ATTORNEY'S FEES.**

**COSTS TO BE PAID BY APPELLANT.**

---

6. In *Foster*, this Court stated that in divorce cases, counsel fees shall be awarded only if the wife's income is insufficient to care for her needs. *Foster*, 33 Md.App. at 78, 364 A.2d 65. The statute applied in *Foster* has since been repealed, but the Court's analysis in that case provides an important guide for a chancellor's consideration of the parties' relative financial resources and needs as required by the current statutes.